UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JAMES WATSON

       Plaintiff,

v.

347 SOMI, LLC,
d/b/a Beauty & the Butcher

       Defendant.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, James Watson ("Plaintiff") hereby sues Defendant, 347 Somi, LLC, d/b/a Beauty & the Butcher ("Defendant"), for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

1. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

3. Plaintiff is a resident of the state of Florida, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA, and the ADA Amendments Act of 2008,

**Page 1 of 15**

("AADG") 42 U.S.C. §12101, and the 28 C.F.R. §36.105(b)(2).

4.    Plaintiff is legally blind, and substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, et seq., and 42 U.S.C. §3602(h).

5.    Plaintiff uses the internet to help him navigate a world of goods, products and services like the sighted. The internet and websites provide him with a window into the world that he would not otherwise have. He brings this action against Defendant for offering and maintaining a website that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the JAWS Screen Reader software, which is one of the most popular reader Screen Reader Software ("SRS") utilized worldwide to read computer materials and comprehend the website information which is specifically designed for persons who are blind or have low vision. Due to his disability, Plaintiff is unable to read computer materials and/or access the internet and websites for information without the assistance of appropriate and available auxiliary aids, and screen reader software specially designed for the visually impaired.

6.    The Screen reader software translates the visual internet into an auditory equivalent. at a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor

hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7.      Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he monitors websites to ensure and determine whether places of public accommodation and/or their websites are in compliance with the ADA.

8.      Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. The place of public accommodation that the Defendant owns, operates, or leases is located in Miami-Dade County.

9.      Defendant, 347 Somi, LLC, is a Florida Limited Liability Company, authorized and doing business in the State of Florida, which owns and/or operates a restaurant known as "Beauty & the Butcher" and part of the Grove Bay Hospitality Group, located at 6915 Southwest 57th Avenue, S Red Rd, Coral Gables, FL 33143, and open to public. As such a Place of Public Accommodation subject to the requirements of Title III of the ADA and it's implementing regulation as defined by 42 U.S.C. §12181(7), §12182, and 28 C.F.R. §36.104(2), located within this District.  Defendant's products and services are also offered

and available to the public through its Website.

10.     As the owner, operator, and/or controller of a restaurant bar open to the public, Defendant is defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "a restaurant, bar, or other establishment serving food or drink"; 42 U.S.C. §12181(7) and 28 C.F.R. §36.104(2).

11.     Subsequent to the effective date of the ADA, Defendant constructed, or caused to be constructed, a website https://www.beautyandthebutchermiami.com (hereinafter "website"). One of the functions of the Website is to provide public information about Defendant's public accommodation "Beauty & the Butcher", including specials, services, accommodations, privileges, benefits and facilities available to patrons at physical location. Defendant also sells to the public its services and merchandise through the website, which acts as a point of sale for goods and services available in, from, and through Defendant's physical location. On information and belief, Defendant also continually and/or periodically updates and maintains the website.

12.     The website is offered as a means for the public to become familiar with "Beauty & The Butcher," including its menu options, hours of operation, location, reservation availability, private-event offerings, and other information Defendant seeks to communicate. Through the website, users can view food and beverage menus, learn about the restaurant's concept and atmosphere, make online reservations, inquire about private dining and events, and join the mailing list to receive updates, news, and promotions. The website also provides a photo gallery, allows users to contact the restaurant directly through an online form, and links to Beauty & The Butcher's social-media platforms for additional information and updates. By offering these features—which allow the public to access information, engage with the

business, and make reservations associated with visiting the physical restaurant—the website serves as an integral component of the goods and services offered by Defendant. Accordingly, it has a sufficient nexus to Defendant's brick-and-mortar location and is considered part of a physical place of public accommodation, subject to the requirements of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181(7), and 28 C.F.R. § 36.104(2)

13.     The website is an extension of Defendant's place of public accommodation. By and through this website, Defendant extends its public accommodation into individuals' homes, portable devices, and personal computers wherever located. The website is a service, facility, privilege, advantage, benefit, and accommodation of Defendant's place of public accommodation. For example, the website provides essential information about the restaurant, including its menu options, hours of operation, location, reservation capabilities, private-event offerings, gallery, and the ability for users to contact the restaurant directly online. Defendant's website also allows users to join a mailing list for news and promotions and links to Defendant's social-media pages to provide additional updates and information. Defendant's website provides access to the benefits of Defendant's physical restaurant, and Plaintiff was denied those benefits when she could not access Defendant's website. Accordingly, the website is integrated with, and has a sufficient nexus to, Defendant's brick-and-mortar location. Therefore, it is governed by the following provisions:

a.     42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

b.      42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

c.      42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

d.      42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

e.      42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

f.      42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such

programs or activities that are not separate or different."

g.      42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

h.      42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]'

14.     As the owner or operator of the subject website, Defendant is required to comply with the ADA and the provisions cited above. This includes an obligation to create and maintain a website that is accessible to and usable by visually impaired people so that they can enjoy full and equal access to the website and the content therein, including the ability to purchase a gift card online, make a reservation, and contact the venue through the website.

15.     Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the

non-visually disabled public both online and in the physical locations. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

16.     Plaintiff attempted to access and/or utilize Defendant's website to test for accessibility, and educate himself as to "Beauty & The Butcher," hours of operation, location, menu selection, pricing, and services, but was unable to, and he is still unable to enjoy full and equal access to the website and/or understand the content therein because several portions of the website do not interface with the  JAWS Screen Reader software. Features of the website that are inaccessible include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

i.     Guideline 1.3.1 – Info and Relationships. The events announced in the 'Happenings' calendar are not clearly associated with a particular date or day of the week. Sighted users can see the date and day of the week that each event falls on, but screen reader users only hear the event name. None of the dates or days of the week for the events are announced, so users would have no idea when the events take place. *Note: It takes approximately 60 tab key presses to reach any links related to accessibility, which are only present in the footer. The 'Accessibility Statement' link and 'Website Accessibility Assistance' links display information about the accessibility standards but have no links to activate or download any assistive technology. The very last link announced before focus returns to the address bar is the 'Assistive Technology Solution' link, which opens a third-party site where users must then download, install, and train on a third-party accessibility tool to be able to use it on the site. We did not install this third-party tool for the audit.

ii.     Guideline 1.3.1 – Info and Relationships (2). The 'Start Time' and 'End Time' on the 'Event Request' page cannot be adjusted as expected. When the user tabs to either of these fields, a list of time options is automatically expanded as the screen reader announces, "Start/end time edit selected (currently selected time)." Pressing the down-arrow key then visibly moves focus through the time options in the expanded list, but the screen reader only announces the same, currently selected time with each arrow key press. This incorrectly suggests to the user that there are no other time options available for selection. However, if the enter key is pressed at any point, the time option in focus when it was pressed is then announced, followed by the word "unselected." This causes further confusion as to what happened or whether a new time option was actually selected. Overall, this is a very confusing experience which may prevent users from being able to

successfully select a start time or end time for the event.

iii. Guideline 2.1.1 – Keyboard. The date picker on the 'Gift Card' page is not accessible. When the user tabs to the 'Future Date' field, the screen reader announces, "Future delivery date edit selected (today's date)," as the date picker is automatically expanded. Screen reader users are never notified that a date picker has been displayed and attempts to access it with the arrow keys or tab key are unsuccessful. Pressing the down-arrow key results only in the announcement of the currently selected date (today's date), sometimes with the word "unselected" announced afterward, and pressing the tab key results in the date picker closing and focus moving to the next field on the page.

iv. Guideline 2.1.1 – Keyboard (2). The date picker on the 'Private Event' page is not accessible. When focus moves to the 'Event Date' field, a date picker is automatically displayed as the screen reader announces, "Event date edit required blank." It is unclear that a date picker has been displayed. Then, with the next tab key press, the date picker collapses as focus moves to the next field on the page. Attempts to navigate into the expanded date picker with the down-arrow key result only in the announcement of "blank." As a result, users cannot access the date picker with the tab key or arrow keys, nor are they advised of the proper date format for the field.

v. Guideline 2.1.2 – No Keyboard Trap. Tab focus gets stuck in expanded submenus. Once a collapsed navigation button is selected, its submenu is expanded and the user can tab into it. However, once focus moves to the submenu, the user cannot close or tab out of it to return to the home page. The only way to close the submenu is to select a link within it (announced as only text), which would then open a new page entirely.

vi. Guideline 2.4.3. Focus Order. The 'Add Another eGift Card' button is not accessible on the 'Gift Card' page. This button is skipped over when tabbing from the 'ReCAPTCHA' challenge box to the 'Check Out' button. As a result, screen reader users cannot add additional gift cards to their order.

vii. Guideline 2.4.3. Focus Order (2). When a new reservation date is selected from the date picker on the 'Reservation' pop-up, the date picker collapses, and the next tab key press then moves focus to the 'Learn More' link at the bottom of the pop-up. The 'Time' and 'Guests' fields and 'Find a Table' button are skipped over in the process. As a result, the user would have to either tab backwards using 'Shift + Tab' or continue tabbing to the toolbar and then onto the pop-up a second time to be able to adjust the 'Time' or 'Guests' fields and search for a table. This was tested multiple times with the same result.

viii. Guideline 3.3.1 – Error Identification. Error notifications are not announced on the 'Private Event' page. If the 'Submit' button is selected before the required

input fields are completed, error messages appear at the top of the page, and the page visibly scrolls to the top. However, nothing is announced by the screen reader when this happens, and focus does not return to any of the invalid fields. Instead, the next tab key press results in the page scrolling back down and focus continuing down the page and into the footer. The user would not know that errors occurred, and in order to access the error messages, they would have to navigate backwards up the page with the up-arrow key, which is not the expected behavior.

17.     The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may relate to various third-party vendor platforms does not absolve Defendant of culpability. Because restaurants are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third-party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

18.     Plaintiff continues to attempt to use the website and/or plans to continue to attempt to use the website in the near future, and in the alternative, Plaintiff intends to monitor the website, as a tester, to determine whether it has been updated to interact properly with screen reader software.

19.     That Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same browsing, shopping experience, and access to the same

information, sales, and services, as provided at the Website and in the physical location as the non-visually disabled public.

20.     As more specifically set forth above, Defendant has violated the above provisions of the ADA by failing to interface its website with software used by visually impaired individuals. Thus, Defendant has violated the following provisions either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff effective communication on the basis of her disability in accordance with 28 C.F.R. Section 36.303 *et seq*.

a.     by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

b.     in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

c.     in failing to allow Plaintiff to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

d.     by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

e.     by failing to afford Plaintiff goods, services, facilities, privileges,

advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

f.      notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

g.      by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

h.      by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

21.      As a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his blindness and the Website's access barriers. Thus, Plaintiff as well as others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

22.    As the result of the barriers to communication which are present within the website and by continuing to operate and/or benefit from the website with such barriers, Defendant has contributed to Plaintiff's frustration, humiliation, sense of isolation and segregation and has deprived Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the public. By encountering the discriminatory conditions at Defendant's website and knowing that it would be a futile gesture to attempt to use the website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the public and is deterred and discouraged from doing so. By maintaining a website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the public.

23.    Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's violations until Defendant is compelled to comply with the ADA and conform the website to WCAG 2.1 Level A and AA Guidelines.

24.    Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to this website as described above. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant. Plaintiff desires to access the website to avail himself of the benefits, advantages, goods and services therein, and/or to assure herself that this website has complied with the ADA so that he and others similarly situated will have full and equal enjoyment of the website without fear of discrimination.

25.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs

and litigation expenses from the Defendant under 42 U.S.C. § 12205 and 28 CFR 36.505.

26.  Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

27.  Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter its website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

**WHEREFORE,** Plaintiff, James Watson demands judgment against Defendant, 347 Somi, LLC, d/b/a Beauty & the Butcher, and requests the following injunctive and declaratory relief:

a.  The Court issue a Declaratory Judgment that determines that the Defendant's website at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b.  The Court issue a Declaratory Judgment that determines that Defendant's website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

c.  The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its website to ensure that it is readily accessible to and usable by persons with vision impairment;

d.  That this Court issue an Order directing Defendant to alter its website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

e.  That this Court enter an Order directing Defendant to evaluate and neutralize its

policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

f.   That this Court enter an Order directing Defendant to continually update and maintain its website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g.   An award of attorney's fees, costs and litigation expenses under 42 U.S.C. § 12205; and,

h.   Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this December 2, 2025.

By: */s/ J. Courtney Cunningham*
Juan Courtney Cunningham, Esq.
FBN: 628166
**J. COURTNEY CUNNINGHAM, PLLC**
8950 SW 74th Court, Suite 220,
Miami, Florida 33156
T: 305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*